[Civ. No. 4670.  First Appellate District, Division One.—May 29, 1924.]

ALAMEDA COUNTY WATER DISTRICT (a Public Corporation) et al., Appellants, v. SPRING VALLEY WATER COMPANY (a Corporation) et al., Respondents.

[1] ARBITRATION—SUBMISSION MADE PENDING ACTION—AWARD—DISMISSAL OF ACTION.—Where the parties to an action entered into an arbitration agreement concerning water rights subsequently to the filing of the complaint and before issue was joined by which it was agreed that no further proceedings should be taken in the action, except that defendant should file its answer, until a settlement was made by the arbitrators and that upon such settlement being made it should become "final and conclusive upon the parties," and that "in case such settlement be had, such action shall thereupon be dismissed," and a settlement by said arbitrators was made, the right of the defendant to have the action dismissed upon the settlement by said arbitrators of the subject of said arbitration became absolute under the law as well as under the terms of said arbitration agreement, and such settlement concluded the action and rendered unnecessary any trial or the determination of any issues of fact.

[2] ID.—ARBITRATION AGREEMENT—CONSTRUCTION OF—JURISDICTION.— Such arbitration agreement was in the nature of a common-law submission to arbitration, a voluntary withdrawal of the case

———————

2.  See 3 Cal. Jur. 48; 2 R. C. L. 359.

from the jurisdiction, by which the court lost all control over the case and had no authority to enter judgment, providing the settlement was reached by the arbitrators.

[3] ID.— COMMON-LAW SUBMISSION TO ARBITRATION — JUDGMENT OF DISMISSAL—APPEAL—MODIFICATION OF AWARD.—The arbitration agreement in question having been a common-law submission to arbitration and upon the making of the award the trial court having lost jurisdiction to hear and determine the merits of the controversy or of the award, except to order a dismissal of the action, and the trial court having followed that course, the only judgment rendered by it was one of dismissal, the merits of the award not having been considered and the award itself not having been either adopted or rejected, and this being so, the appellate court has no power on appeal from such judgment of dismissal to order a modification of the award.

[4] ID.—MODIFICATION OF AWARD OF ARBITRATORS—EQUITY.—If, as contended by plaintiffs, the arbitrators in violation of the terms of such arbitration agreement, which concerned water rights, "stepped outside of any authorization conferred upon them and undertook to defeat the rights of" certain land owners, such plaintiffs are given ample remedy in equity to correct the award of the arbitrators so as to eliminate the objectionable portions thereof.

[5] ID.—STIPULATIONS.—The arbitration agreement in question was not a stipulation to dismiss made under subdivision 2 of section 581 of the Code of Civil Procedure, but was an agreement to arbitrate and the dismissal consequently followed as a natural result of the court's loss of jurisdiction upon the settlement being made by the arbitrators.

[6] ID.—AWARD—UPON WHOM BINDING.—In this action by a public water district and certain land owners within said district which was dismissed after the making of an award under an arbitration agreement, the contention that the individual plaintiffs were not parties to the arbitration agreement and that the award did not determine their rights, cannot be sustained.

---

(1) 5 C. J., p. 49, sec. 78 (Anno.).  (2) 5 C. J., p. 49, sec. 78 (Anno.).  (3) 5 C. J., p. 49, sec. 78.  (4) 5 C. J., p. 197, sec. 503.  (5) 5 C. J., p. 40, sec. 62.  (6) 5 C. J., p. 138, sec. 327 (Anno.).

APPEAL from a judgment of the Superior Court of Alameda County. J. J. Trabucco, Judge Presiding. Affirmed.

The facts are stated in the opinion of the court.

---

4.  See 3 Cal. Jur. 80, 86; 2 R. C. L. 393.
5.  See 9 Cal. Jur. 514.
6.  See 3 Cal. Jur. 67; 2 R. C. L. 386.

Clark, Nichols & Eltse for Appellants.

McCutchen, Olney, Mannon & Greene for Respondents.

KNIGHT, J.—By this action plaintiffs sought to enjoin the defendant, Spring Valley Water Company, from obstructing, extracting, arresting or diverting any of the waters of Alameda Creek, which flow on the surface of the bed of said creek or which flow or percolate underneath the surface thereof. Subsequent to the filing of the complaint, and before issue was joined, an arbitration agreement was entered into between the plaintiff Alameda County Water District and the defendant Spring Valley Water Company, which provided for a settlement of the controversy between the parties by the members of the state water commission and upon settlement thereof that the action be dismissed. An award of settlement was made by the arbitrators and thereafter, on motion of said defendant Spring Valley Water Company, said action was by the trial court dismissed. Its judgment of dismissal was entered accordingly, from which order and judgment of dismissal all of the plaintiffs have appealed.

Plaintiff Alameda County Water District is a public water district organized under the act of the legislature approved June 10, 1913 (Stats. 1913, p. 1049), said district comprising approximately 44,000 acres in Alameda County, situate in the region surrounding Niles, where Alameda Creek has its origin, and westerly and southerly thereof to San Francisco Bay, a portion of which is usually designated as the "Niles Cone." The remaining plaintiffs are land owners within the district.

It appears from the allegations of the complaint that beneath the surface of the lands in question there are various strata of gravel through which the waters flowing in Alameda Creek percolate and supply the territory with water through this underground drainage, and that in years of drought practically all of the waters of Alameda Creek seep into this underlying gravel strata. It is further alleged in the complaint that the defendant water company, at the time the action was brought, was constructing a storage reservoir on Calaveras Creek, a tributary of Alameda Creek, by means of which it planned to increase the diversion from Alameda Creek which it had previously been making. The

action sought to enjoin the construction of said Calaveras dam and any increase of the diversion from Alameda Creek or its tributaries, for the reason, as said complaint alleges, that said dam and an increased diversion would tend to decrease the supply of water to the various lands underlaid by the gravel strata to which reference has heretofore been made, and that the flood waters of the creek which do not percolate into the gravel deposit upon the lowlands situated within the district large quantities of silt, and that said silt reclaims the lowlands, rendering them capable of cultivation and useful for agricultural purposes; and that the diversion of the flood waters will irreparably damage the lands affected by the overflow.

Before the cause was brought to an issue the Alameda County Water District and the Spring Valley Water Company entered into said agreement wherein, after reciting the objects to be attained, it was stated that said parties were unable to decide upon the terms of settlement of the controversy by reason of the lack of physical data necessary for a fair consideration of the question and had therefore agreed that for a period of three years the state water commission should gather the necessary data and upon the completion of that time, or sooner in case it should obtain sufficient data, said water commission should proceed, in conference with the parties, to fix and determine the terms and conditions in accordance with the character of the particular season upon which such storage and additional diversion might be made, the object being to reach a settlement whereby in the most economical and practical manner it should be made possible without further litigation to conserve and put to beneficial use the waters of Alameda Creek and its tributaries which were not being used, and at the same time prevent any damage being done to the lands underlaid by the water-bearing strata, supplied in whole or in part from Alameda Creek, or if it was not possible to prevent such damage entirely to compensate the owners of said land to the extent to which such damage was not prevented; the making of such compensation by the water company, if it be provided for by such settlement, to be a condition of the exercise by said water company of any rights or privileges accorded to it by such settlement. Said agreement further provided "the settlement so fixed and determined by the State Water Commission shall be final and

conclusive upon the parties hereto, but the Water Company
shall not be deemed to waive any existing rights which it may
have acquired against particular land owners or particular
lands within the Water District (the Water District, however,
not conceding that any such rights or claims are binding upon
it), and the settlement awarded by the State Water Com-
mission shall be subject to such particular rights so far as
such rights may exist." The agreement then provided the
manner of releasing the water to flow down Alameda Creek
for the purpose of ascertaining the water levels of the lands
in question. It was also agreed that no further proceed-
ings be taken until the said water commission should make
findings and award or until before the expiration of the
three-year period the commission should report that it was
unable to make such settlement, and in case such settlement
be had such action should thereupon be dimissed; also that
if there be a failure to obtain such settlement the right to
proceed with such action should revive to the plaintiff therein
and the intervening lapse of time "shall not affect any right,
cause of action or defense which any party thereto may
have, or which any party on whose behalf such action is
brought may have."

Pursuant to the terms of said agreement the members of
said state water commission undertook the work of assembling
the physical data necessary to a determination of the matter
in controversy and placed their engineer in charge of said
work. This work was commenced in 1916 and the three-
year period included the years 1916–1917, 1917–1918 and
1918–1919, a report being made after each season to the in-
terested parties, the final report being made under date of
June 3, 1920. After the submission of the final report the
parties were asked to comment upon said report and to sub-
mit their suggestions as to a proper solution of the problem.
Several conferences followed between the parties and their
attorneys at which discussion was had of said report and
also of the written suggestions and comments submitted by
the respective parties. The last conference was held on Oc-
tober 21, 1920, and the last written comments and sugges-
tions were submitted on November 19, 1920.

On December 28, 1920, the said arbitrators rendered an
elaborate report of its investigations in which it adopted the
findings of its engineer under whose direction the data
necessary for such final determination was assembled. Said

arbitrators, among other things, found that there were 36,-
800 acres of land within said water district affected by said
percolating waters and that said Water Company had ac-
quired by conveyances certain water rights in and to 6,080
acres of land in said district riparian to said Alameda Creek.
After determining the amount of water which was held to
be the quantity of flow of said creek which percolated into the
gravel strata underlying the lands in said district, said arbitra-
tors deducted from said quantity sixteen and one-half per cent,
determining that the amount so reduced was the amount which
should be allowed to go down the creek and flow into the
gravel strata underlying all of the lands in said district, in-
cluding the lands owned by persons, the predecessors in
interest of whom had made said grants of said riparian
rights in favor of the Spring Valley Water Company.
Thereafter, to wit, on October 20, 1921, said Water Com-
pany gave notice of motion to dismiss said action on the
ground that the arbitrators had made their findings and award
in accordance with said agreement. Said motion came on
for hearing on November 4, 1921. Said plaintiffs objected
to the entire proceeding upon several grounds and in sup-
port of said objections filed and submitted two affidavits,
the substance of which was to the effect that said water dis-
trict had not waived its right to attack, object to or defend
against said award; that said arbitrators had not complied
with the terms of and had in fact exceeded their powers
under said arbitration agreement by attempting to deduct said
sixteen and one-half per cent of water from the total quantity
of water they otherwise would have permitted to flow down
said Alameda Creek through said district; that the determina-
tion of what was in fact done under said alleged settlement
by arbitration would require the introduction of much evi-
dence and that said matter could not be fairly determined
until an answer was filed and a trial of the action had.
Said motion was submitted and on the fourteenth day of
December, 1921, was by the court granted and judgment of
dismissal accordingly entered on December 16, 1921, from
which said order and judgment of dismissal this appeal has
been taken.

Appellants make five points on appeal, the first being that
the trial court did not lose jurisdiction by reason of the
mere submission of said cause to arbitration, particularly
where it expressly stated in said arbitration contract that

the arbitration called for shall be made before a dismissal occurs.   In this respect appellants contend that if the award was made by said arbitrators jurisdiction was still retained by the court to require defendant to plead to the complaint and that therefore the right was reserved in appellants to attack said award and to offer evidence for that purpose.

In answer to this contention the respondent states that it makes no claim that the action was discontinued or made subject to dismissal by the mere fact of the submission to arbitration, but that it does claim that when the award was made the action was then subject to dismissal both because the controversy had been concluded by the award and there was nothing left to be determined by the action and because the parties had agreed in such case that it should be dismissed.   In support of this position the respondent has cited the case of *Draghicevich* v. *Vulicevich*, 76 Cal. 378 [18 Pac. 406], the ruling in which they claim is decisive of the question here involved.

[1] In view of the context of the arbitration agreement we are satisfied that the respondent's position is sound and that the procedure adopted by the trial court in the dismissal of the action was correct.   In *Draghicevich* v. *Vulicevich, supra,* the matters in dispute were before trial submitted to arbitration by the parties and an award made. Later, but still before trial, a stipulation was filed setting forth the fact of the arbitration and award.   Nevertheless, the court proceeded to try the case and gave judgment.   On appeal the judgment was reversed and the court below was directed to dismiss the action, the supreme court saying that "the submission of the cause to arbitration operated as a discontinuance of the action and that after such discontinuance the proceedings of the court were without jurisdiction." In the instant case the parties agreed by their arbitration agreement that no further proceedings should be taken in the action, except that defendant should file its answer, until a settlement was made by the arbitrators and that upon such settlement being made it should become "final and conclusive upon the parties," and that "in case such settlement be had, such action shall thereupon be dismissed." The alternative was also provided for in said arbitration agreement in that it stated that "in case there be a failure to obtain such settlement then the right to proceed with such action shall revive to plaintiffs therein."   A settlement by

said arbitrators was made and such settlement concluded the action and rendered unnecessary any trial or the determination of any issues of fact. The right of the defendant to have the action dismissed therefore became absolute under the law as well as under the terms of said arbitration agreement.

It is evident from the terms of said agreement that there was no intention of the parties to bring themselves within an arbitration provided for by the code (sec. 1283 et seq., Code Civ. Proc.). In fact no such contention is made by appellants. [2] Their agreement was in the nature of a common-law submission to arbitration, a voluntary withdrawal of the case from the jurisdiction, by which the court lost all control over the case and had no authority to enter judgment, providing the settlement was reached by said arbitrators, which, as we have already seen, was accomplished. (*Heslep* v. *City of San Francisco*, 4 Cal. 1; *Gunter* v. *Sanchez*, 1 Cal. 45; *McNulty* v. *Solley*, 95 N. Y. 242; *Bowen* v. *Lazalere*, 44 Mo. 383; *Buel* v. *Dewey*, 22 How. Pr. [N. Y.] 242.)

The cases cited by appellants do not in our opinion lay down any different rule. In the case of *Laflin* v. *Chicago etc. R. Co.*, 34 Fed. 850, the court distinguished between an actual submission and an executory arbitration agreement and held that there was no discontinuance where no arbitrators are chosen and nothing is done by the parties under the agreement. That is not the case here. The submission was had and an award made and the agreement to dismiss was an additional reason for granting the motion. (18 Cor. Jur. 1179; *Toupin* v. *Gargnier*, 12 Ill. 79.) The case of *Callahan* v. *Port Huron etc. R. Co.*, 61 Mich. 15 [27 N. W. 718], contemplates a stay not followed by proceedings or an award, the court saying that "it may easily happen that the time for bringing a new suit has passed and action by the referees may be prevented by failure or refusal of either party to proceed before them," and that "there are strong reasons of justice against regarding a reference not followed by an award as in any case going further than becoming the basis of an application to stay proceedings rather than operating as an absolute stay." This again is not the case here. There was an award and a conformity with the agreement and following the rule laid down in

*Draghicevich* v. *Vulicevich, supra,* the case was dismissed. We therefore see no error in the court's ruling.

The second and third points made by appellants relate to that part of the award which provides that said Spring Valley Water Company, on account of its ownership of said riparian rights in the lands within the district, may reduce the quantity of the flow of water down said Alameda Creek to the extent of sixteen and one-half per cent. In this respect it is contended that the award was not what the parties contracted for; that it shows upon its face that said arbitrators exceeded their authority to the prejudice of the land owners of the district and of the district itself, for the reason that the terms of said arbitration agreement expressly negatived the power of the arbitrators to determine any issues between the Spring Valley Water Company and the owners of the land along the creek resulting from prior deeds and agreements and that therefore it was error for the court to dispose of the case by motion, particularly in view of the objections of plaintiffs, who denied that the award conformed to the contract of arbitration and who reserved the right, as they claim, to attack the award on every legal ground. While the respondent does not concede that the award of the arbitrators which provides for a reduction of the flow of the quantity of said water down said creek was in excess of the authority of the said arbitrators, it does contend that in the event this court should conclude that such action of the arbitrators in making such reduction complained of was erroneous and open to review by the courts, the award as a whole is not involved and should be allowed to stand, amended only by the elimination of the objectionable provisions, and in this regard respondent in its brief says: "This deduction, as we have said, is not of importance either to the land owners of the district or to the Water Company. This appears plainly from the fact that in order to bring the matter to an end we have repeatedly offered in vain, and have offered in this brief, to consent to an amendment of the award by the elimination of the deduction, provided only that the Water District would then acquiesce in the award." And in respondent's reply brief it also states "we would also call attention to the fact that respondent has repeatedly offered to waive the sixteen and one-half per cent deduction but without avail." [3] In view of the fact, as above pointed out, that this was a common-law submission to arbitra-

tion and that upon the making of the award the court lost jurisdiction to hear and determine the merits of the controversy or of the award, except to order a dismissal of the action, and the trial court, having followed that course, the only judgment rendered by it was one of dismissal. The merits of the award were not considered and the award itself was neither adopted nor rejected. That being so it follows that this court would not have power on appeal to order a modification of the award, for the simple reason that the award forms no part of the judgment rendered in the action. We are therefore of the opinion that respondent's suggestion of the modified award cannot be adopted. **[4]** If, however, as appellants contend, said arbitrators in violation of the terms of said arbitration agreement "stepped outside of any authorization conferred upon them and undertook to defeat the rights of the land owners within the district by cutting down the natural supply of water to said lands when they were supposed to substitute a quantity equivalent to such natural supply" they are given ample remedy in equity to correct said award so as to eliminate the objectionable portions thereof concerning the reduction by said arbitrators of the flow of said water and which, as before stated, respondent is willing should be done. (*Utah Const. Co.* v. *Western Pacific R. R. Co.,* 174 Cal. 156, 160 [162 Pac. 631]. In the case of *Muldrow* v. *Norris,* 2 Cal. 74 [56 Am. Dec. 313], it is stated that a court of equity may interfere to correct accident or mistake appearing on the face of the record and that it makes no difference whether the mistake is one of fact or law. The court pursued the subject further upon a rehearing in which the court said that "it is proper for courts to distinguish between those portions (of the award) which are good and those which are not, where the award is not attacked upon the ground of fraud, and the subject matter is in its nature divisible." It is plain, we think, that if appellants desired to correct the alleged error of law on the face of the award, resort might be had to a court of equity. Respondent, as above stated, is willing to stipulate that the objectionable parts of the award be eliminated providing the remaining portions of the award, which is the product of three years' labor, may not be disturbed.

There is no merit in the fourth point made by appellants to the effect that if the agreement be treated as a stipulation to dismiss it is ineffective for the reason that it was

signed by the parties and not by the attorneys for the parties.  (Subd. 2, sec. 581, Code Civ. Proc.)  [5]  It is obvious that said document was not a stipulation to dismiss made under the code sections cited, but was an agreement to arbitrate and the dismissal consequently followed as a natural result of the court's loss of jurisdiction upon the settlement being made by the arbitrators.

[6]  Appellant's final contention is that the individual plaintiffs are not shown to have used the district as the trustee of an express trust and the award could not, as to them, determine their rights, they not having signed the agreement.  It is apparent, we think, that the individual plaintiffs were not only parties to the arbitration agreement in a moral sense, but likewise in a legal one.  The action was one avowedly brought, according to the allegations of the complaint, on behalf of all land owners, by the district as the representative of said land owners.  While the Water District was the party to the arbitration agreement in settlement of the action, the individual plaintiffs, represented by the same counsel, acquiesced in this for several years.  The motion to dismiss was made on the ground that plaintiff Alameda County Water District, for and on behalf of itself and its coplaintiffs, agreed in writing with the defendant that the controversy should be submitted for investigation and settlement and that upon the terms of such settlement being prescribed said action should be dismissed; that the terms of the settlement were prescribed and laid down but that the plaintiffs nevertheless neglected and refused to dismiss said action.  No denial was made as to the allegation that by the agreement the individual plaintiffs were not represented by the Water District and the court after submission of the cause granted said motion.  We think that the facts justified the court's action.  Other details appear which might operate as an estoppel to the individual owners, but a discussion of them would, we think, serve no useful purpose.  Judgment affirmed.

Tyler, P. J., and St. Sure, J., concurred.

A petition by appellants to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 28, 1924.

All the Justices concurred.